# Appeal of John Jacobs, Trustee, &c.

107  137
197  139
107        137
26 SC ²639

1. The delivery of a deed, and the entry of a judgment bond for part of the purchase money, must be a continuous act, in order to give the judgment priority as a purchase money lien.

2. A. sold B. a house and lot for $4,000; $1,000 was paid A. by the transfer to him of a judgment held by B.'s wife, and $1,500 of the balance was provided for by B.'s judgment bond in favor of A., given to A.'s agent on the delivery of the deed. B.'s attorney told this agent

to enter judgment on the bond immediately, as he, the attorney, was going to enter judgment against B. the next day on a bond given by B. to a trustee for his wife, for her said judgment. The agent did not enter up A.'s bond, however, until the second day, and meantime the attorney had entered judgment against B. on his wife's bond. The property was afterwards sold under A.'s judgment, and the fund, which was claimed both by A. and Mrs. B., paid into court.

*Held*, that Mrs. B. was entitled to the fund. The delay in entering judgment on A.'s bond prevented the same from having priority as a purchase money lien; and there was no sufficient evidence of an agreement between the parties, made when the bonds were executed, that A.'s judgment was to have priority irrespective of the date of entry, to entitle A. to the fund, after his neglect to enter his judgment in time to secure it.

3. The Supreme Court will reverse a decree confirming an Auditor's report if his conclusions are not warranted by the facts specifically found, or not materially disputed.

June 5th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Cumberland county:* Of May Term, 1884, No. 58.

Appeal by John Jacobs, trustee of Mrs. C. B. Rupp, from a decree of said court confirming the report of an Auditor appointed to make distribution of a fund resulting from a sheriff's sale of certain real estate under judgments confessed by the purchaser.

The following facts (which are more fully set out in the opinion of the Supreme Court), appeared before the Auditor, John R. Miller, Esq.: D. H. Gill contracted with C. B. Rupp for the sale of a certain house and lot on Bedford street in the borough of Carlisle. The consideration, which was $4,000, was provided for as follows: Rupp assumed the payment of a $1,000 mortgage against the property held by Mrs. Miller. Of the remainder, $1,000 was paid by a transfer to Gill of a judgment of that amount against one George Rinesmith, held by Mrs. C. B. Rupp; $500 was paid in cash on the delivery of the deed to Rupp, and on the same day Gill's agent, one Joseph Shrom, received from Rupp's attorney, Mr. Hays, a judgment bond of C. B. Rupp for the balance of $1,500.

At the same time Rupp executed a judgment bond to John Jacobs, trustee for Mrs. Rupp, for $1,000; and when Mr. Hays gave Shrom the judgment bond in favor of Gill he told him (Shrom) that he ought to enter it up at once, because he (Hays) had a judgment bond which Rupp had given to his wife, and which would be entered the next day.

Mr. Hays accordingly entered up the judgment bond in favor of Mrs. Rupp on the following day, April 2d. But Shrom did not enter Gill's judgment until April 3d. Subse-

quently the property was sold under the Gill judgment, bought by Gill, subject to the mortgage, for $1,305, and the fund paid into court.

In reference to the distribution of this fund the Auditor reported as follows:

" It seems to your Auditor from this state of facts that it is a reasonable conclusion that the understanding between all the parties tó this transaction, except John Jacobs and Mrs. Rupp, who nowhere appear in this audit, was that the Gill judgment should be entered first and be the first lien; for certainly Mr. Hays, careful business man as he is, would not have told Shrom to enter the Gill judgment at once, as he would enter Mrs. Rupp's the next day, unless his clients knew and were satisfied that the Gill judgment should be entered first.    The conclusion, therefore, with the Auditor is irresistible that the understanding and intentions of the parties were that Mr. Gill's judgment for purchase money should be paid before that of Mrs. Rupp, and it is hardly presumable that either Mr. Gill or Mr. Shrom would deliver the deed without some such understanding, as otherwise Gill's judgment would be jeoparded.    While the Auditor has no doubt as to the intention and understanding of the parties, he is not entirely free from doubt as to the proper distribution of the fund; there is no evidence of any actual agreement between the parties that the Mrs. Rupp's judgment was not to be entered until after the entry of the Gill judgment, and there is no doubt that Shrom was negligent in not entering the Gill judgment when he knew there was another judgment outstanding. He believes, however, that the understanding and the intention of the parties at the time of the transaction, as between themselves, should control this distribution. . . . . . He, therefore, awards the fund, after deducting the costs of this audit, to the judgment of C. H. Gill v. C. B. Rupp."

Exceptions filed to this report by Jacobs, as trustee for Mrs. Rupp, on the ground that the fund should have been awarded to the latter on her prior lien, were dismissed by the court, HERMAN, P. J., delivering the opinion, and a decree entered confirming the report.    Whereupon Jacobs, trustee, &c., took this appeal, assigning for error the decree of the court.

*Hays* (with whom was *Henderson*) for appellant.—The auditor expressly found that there was no evidence of any actual agreement between the parties that Mrs. Rupp's judgment was not to be entered until after the entry of the Gill judgment; and further, that " Shrom was negligent in not entering the Gill judgment when he knew there was another

judgment outstanding." Gill's judgment being entered two days after the conveyance, was a lien only from its entry and did not exclude a judgment entered before it and after delivery of deed: Watt *v.* Steel, 1 Barr 386; Lyon *v.* M'Guffey, 4 Barr 126; Brown *v.* M'Cormick, 6 Watts 60. The fact that it was for purchase money makes no difference: Kauffelt *v.* Bower, 7 S. & R. 64; Semple *v.* Burd, 7 S. & R. 286; Zentmyer *v.* Mittower, 5 Barr 412; Ayer's Appeal, 4•Casey 179; Rigler *v.* Light, 9 Norris 235.

*Samuel Hepburn* for appellee.—It is claimed by the appellee, so found by the Auditor, and approved by the court, that the balance of the purchase money for the property sold by Gill to Rupp, should be a purchase money judgment, and as between Rupp and Gill, be a first lien upon the property deeded to Rupp, after the mortgage to Mrs. Miller. The parties had a right to make such an agreement and the courts will enforce it: Ayer's Appeal, 4 Casey 179, 180; Hendrickson's Appeal, 12 Harris 365; Claason's Appeal, 10 Harris 363, 364; Maze *v.* Burke, 35 Legal Int. 396; Rigler *v.* Light, 9 Norris 235, 237; Gillig *v.* Maass. 1 Tiffany (N. Y.) 216; Freeman *v.* Schroeder, 43 Barb. 619, 620; 29 Howard, Pr. (N. Y.) 263.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

In December, 1879, David Gill by articles of agreement, sold to C. B. Rupp a house and lot of ground, in the borough of Carlisle; the consideration of the purchase was $4,000; of which $1,000 was to be applied to the satisfaction of a first mortgage upon the property; $1,000 was paid at the time of the purchase, by the transfer of a judgment, which the wife of C. B. Rupp held against George Rinesmith; the residue was payable $500 April 1st, 1880, when the deed was to be made, and $1,500 on the 1st of April, 1881, the last payment to bear interest from April 1st, 1880.

On the first day of April, 1880, Gill at the suggestion of Rupp, prepared a deed conveying the property to Rupp's wife, and placed it in the hands of his clerk, Joseph Shrom, for delivery. Mr. Hays, who was the attorney of Mr. Rupp, objected to the execution of the deed, in this form, and advised Mr. Rupp to have the deed in his own name, as the property would furnish him a basis for credit in business. A new deed was thereupon executed, conveying the property to C. B. Rupp, in accordance with the agreement; the instalment of $500, due on that day, was paid; a judgment bond in $1,500 given for the residue of the purchase money, payable 1st April, 1881, and the deed delivered.

In the meantime, Rupp informed Mr. Hays that he had

used the funds of his wife in payment of the purchase money, and Hays wrote and Rupp executed to John Jacobs, in trust for the wife, a judgment bond in the sum of $1,000. This bond was placed with Mr. Hays, for the benefit of the parties interested, and judgment was confessed thereon by him, on the 2d April, 1880. No judgment was entered on the purchase money bond, held by Gill for $1,500, until 3d April, 1880. Mrs. Rupp, therefore, claims to have priority of lien in this distribution, over the judgment of David Gill, although the latter was given for the purchase money of the property. The delivery of the deed, and the entry of the judgment, in order to continue the lien of purchase money, must be a continuous act, must constitute but one transaction, and it is clear that Gill's judgment cannot have priority as a purchase money lien.

It is contended, however, that there was an agreement, or understanding, between the parties at the time the bonds were executed, to the effect that the purchase money judgment should have priority of lien, and that the judgment second in the order of entry is entitled to be first in the distribution, under the agreement. The Auditor fails to find any actual or express agreement to this effect, but after a review of the evidence, concludes that such was the understanding and intention of the parties. He admits, that it is not entirely free from doubt, but, on this ground, awards the fund to the Gill judgment, to the exclusion of the prior lien. This finding of the Auditor, is, we think, erroneous, no such agreement or understanding is established by the evidence. The evidence shows that Gill, as the holder of a purchase money judgment, was to have the right to enter it as the first lien, subject only to the lien of an existing mortgage of $1,000, and that of this right, when opportunity was offered he did not avail himself: this and no more is established by the proof. The specific facts are not materially disputed, the conclusions of the Auditor are deductions from these facts, and are subject to revision and correction if erroneous. This court will reverse a decree confirming an Auditor's report, if his conclusions are not warranted by the facts, specifically found or not materially disputed: Milligan's Appeal, 97 Pa. St. 525; Hindman's Appeal, 85 Pa. St. 466.

Mr. Goodyear, who wrote the article of agreement, testified to an impression that, by the terms of that instrument, the deferred payment was to be a first lien, subject to the mortgage only, but Mr. Gill freely admits that, in the article, there was nothing said about its lien. At that time, the matter " was talked about," and it was understood that it would be the first lien; that and nothing more then occurred.

[Appeal of Jacobs.]

At the delivery of the deed the only persons present were Joseph Shrom and John Hays, Esq.

Mr. Shrom, who acted as the agent of Gill, in the delivery of the deed, says, that the bond was delivered to him " with the understanding that this judgment *was to be entered first*, or before a judgment should be entered in trust for Mrs. C. B. Rupp, the wife of C. B. Rupp." Mr. Hays says, " When Mr. Shrom delivered to me for Mr. Rupp, the deed for the property, I handed to him Mr. Rupp's judgment to Mr. Gill, and said to him, that he ought to.enter that judgment at once, as other judgments might come in ahead of it. I told him that Rupp had confessed a judgment in favor of his wife, and that the judgment was then in my possession. I told him, I would enter that judgment the next day, and that he should enter the Gill judgment at once."

Assuming that the understanding was as stated by Shrom, that the Gill judgment was to be entered first, and become the first lien by virtue of its entry, it clearly appears, from the testimony of Mr. Hays, that Gill had full notice of Mrs. Rupp's obligation, and of the fact that it would be entered on the 2d April; if he desired to avail himself of the priority, to which he was entitled, he should have entered his judgment in time to secure it. His failure or neglect so to do, was a waiver of the privilege accorded him ; there was no agreement that Gill's judgment should have priority irrespective of the date of the entry, and, after entry, the priority of lien was fixed by law.

It is a well known rule of law that where the legal title to real property has been conveyed and possession taken, the vendor retains no lien for the purchase money ; but if a judgment be entered for purchase money, at the delivery of the deed, that judgment will take priority over all intervening incumbrances. Without doubt the parties referred to the priority which the law gives to the lien for a deferred payment, entered at the delivery of the deed ; and, in this, the " understanding " of the parties was correct. But there could be no lien without an entry of the judgment bond, and no priority over intervening rights, except that entry is made at the delivery of the deed. The deed and the bond were contemporaneous, and Gill had it in his own hands to make the $1,500 purchase money judgment the first lien, after the mortgage, if he chose to do so. Rupp had no power in the premises, he could neither oblige Gill to enter his judgment, nor.deter his other creditors from entering theirs. Gill, only, was in default, and it seems reasonable that he should bear the consequences of his own neglect. We are of opinion,

therefore, that distribution should be made to the judgments in the order of their entry.

> The distribution decree of October 6th, 1882, is, therefore, reversed, and the record is remitted to the court below, that distribution may be made in accordance with this opinion, the costs of the appeal to be paid by the appellee.